1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   CHERRISH CASTANEDA,                    No.  2:24-cv-0788-DC-SCR

12                    Plaintiff,

13         v.                                ORDER

14   STATE OF CALIFORNIA
     DEPARTMENT OF MOTOR VEHICLES,
15   et al.,

16                    Defendants.

17

18         Plaintiff is proceeding pro se in this matter, which is referred to the undersigned pursuant

19   to Local Rule 302(c)(21) and 28 U.S.C. § 636(b)(1).  Plaintiff filed a motion for leave to proceed

20   in forma pauperis ("IFP"), which was granted.  ECF No. 6 at 13.  The undersigned issued a

21   screening order pursuant to 28 U.S.C. § 1915, and concluded that Plaintiff's complaint was

22   legally deficient.  *Id.*  The District Judge subsequently dismissed with prejudice all claims against

23   Defendant Department of Motor Vehicles ("DMV"), as well as claims brought under 18 U.S.C.

24   §§ 241-242 as against all Defendants.  ECF No. 7 at 2-3.

25         However, the Court granted Plaintiff leave to amend claims brought under § 1983 and the

26   Americans with Disabilities Act ("ADA") as against Defendant Steve Gordon in his capacity as

27   Director of the DMV.  *Id.* at 2.  Plaintiff filed a First Amended Complaint ("FAC").  The Court

28   now concludes that although some of Plaintiff's claims in the FAC are cognizable for screening

                                        1

1   purposes only, others are either factually deficient or not appropriate as against a named

2   Defendant. Leave to amend these claims is therefore granted, and service will not be directed

3   until after the opportunity to so amend the FAC has passed.

4                          **I. PROCEDURAL MATTERS**

5          The Court begins by addressing two procedural matters. First, the undersigned previously

6   filed Findings and Recommendations recommending that this action be dismissed without

7   prejudice. ECF No. 9. That recommendation followed Plaintiff's failure to timely file an

8   amended complaint as directed by the Court on February 6, 2025 and failure to respond to an

9   order to show cause issued on June 11, 2025 as to why this case should not be dismissed for

10  failure to file an amended complaint. ECF Nos. 7 & 8. Now that Plaintiff has filed the FAC, the

11  order to show cause will be discharged and the Findings and Recommendations withdrawn.

12         Second, Plaintiff's FAC was filed as a motion for leave to amend the complaint. ECF No.

13  10. While Plaintiff's FAC was not timely, in light of Plaintiff's pro se status, that motion for

14  leave to amend is granted and the FAC is deemed properly filed.

15                             **II. SCREENING**

16         A.      <u>Legal Standards</u>

17         The federal IFP statute requires federal courts to dismiss a case if the action is legally

18  "frivolous or malicious," fails to state a claim upon which relief may be granted, or seeks

19  monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). In

20  reviewing the complaint, the Court is guided by the requirements of the Federal Rules of Civil

21  Procedure.

22         Under the Federal Rules of Civil Procedure, the complaint must contain (1) a "short and

23  plain statement" of the basis for federal jurisdiction (that is, the reason the case is filed in this

24  court, rather than in a state court), (2) a short and plain statement showing that plaintiff is entitled

25  to relief (that is, who harmed the plaintiff, and in what way), and (3) a demand for the relief

26  sought. Fed. R. Civ. P. 8(a). Plaintiff's claims must be set forth simply, concisely and directly.

27  Fed. R. Civ. P. 8(d)(1).

28         A claim is legally frivolous when it lacks an arguable basis either in law or in fact.

1    *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  In reviewing a complaint under this standard, the

2    court will (1) accept as true all factual allegations contained in the complaint, unless they are

3    clearly baseless or fanciful, (2) construe those allegations in the light most favorable to the

4    plaintiff, and (3) resolve all doubts in the plaintiff's favor.  *See Neitzke*, 490 U.S. at 327; *Von*

5    *Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010), *cert.*

6    *denied*, 564 U.S. 1037 (2011).

7          The court applies the same rules of construction in determining whether the complaint

8    states a claim on which relief can be granted.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (court

9    must accept the allegations as true); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (court must

10   construe the complaint in the light most favorable to the plaintiff).  Pro se pleadings are held to a

11   less stringent standard than those drafted by lawyers.  *Erickson*, 551 U.S. at 94.  However, the

12   court need not accept as true legal conclusions, even if cast as factual allegations.  *See Moss v.*

13   *U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).  A formulaic recitation of the elements of

14   a cause of action does not suffice to state a claim.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

15   555-57 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

16         To state a claim on which relief may be granted, the plaintiff must allege enough facts "to

17   state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has

18   facial plausibility when the plaintiff pleads factual content that allows the court to draw the

19   reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at

20   678.  A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity

21   to amend, unless the complaint's deficiencies could not be cured by amendment.  *See Akhtar v.*

22   *Mesa*, 698 F.3d 1202, 1213 (9th Cir. 2012).

23         B.    <u>The FAC</u>

24         The FAC alleges that Plaintiff was a DMV employee for twelve years as of the events

25   underlying this action.  ECF No. 10 at 13.  When the COVID-19 pandemic began in 2020,

26   Plaintiff was eight months pregnant and therefore "high risk."  *Id.* at 14.  Rather than offer

27   telework or "Administrative Time Off" per executive guidance, Plaintiff was sent home on

28   involuntary leave.  *Id.*  Plaintiff did eventually receive compensation for an initial period, but was

1    still forced to remain on unpaid leave through pregnancy, postpartum, and nursing.  *Id.*

2         By the time Plaintiff was ready to return to work in June 2021, Governor Gavin Newsom

3    had purportedly issued a workplace mandate requiring all government employees to wear masks

4    and be vaccinated for COVID-19 as a condition of employment.  *Id.*  Plaintiff had religious

5    objections to the vaccine and medical documentation from her physician exempting her from

6    masking, both of which the California Department of Public Health ("CDPH") recognized at the

7    time.  *Id.* at 14-15.  Plaintiff's union, SEIU 1000, subsequently negotiated a Side Letter

8    Agreement ("SLA") that further required government agencies to accommodate employees who

9    have such exemptions without retaliating against them.  *Id.* at 15-16.

10        Plaintiff's attempts to negotiate with the DMV through October 2021, including a "fee

11   schedule" warning the DMV of the liability it would incur by continuing to deprive her of

12   employment, were allegedly "met with silence or cursory rejection."  *Id.* at 15.  As part of these

13   efforts, Plaintiff requested a reasonable accommodation under the ADA and the California Fair

14   Employment and Housing Act ("FEHA").  *Id.*  This would permit her to telework from home or

15   work in a sequestered part of her worksite, both of which DMV policy permitted at the time.  *Id.*

16   The DMV categorically denied her request without explanation or any interactive process to find

17   a suitable accommodation.  *Id.*  Managers also threatened to fire Plaintiff if she did not abandon

18   her stance on the exemptions, in blatant violation of the SLA.  *Id.* at 16.

19        The DMV then created what Plaintiff alleges was a hostile work environment.  *Id.* at 17.

20   In late 2021, the DMV compelled Plaintiff to wear a large plastic "splash shield" over her face in

21   lieu of a mask.  *Id.* at 16-17.  Given that a splash shield stood out more, the FAC alleges that this

22   was designed to dehumanize Plaintiff and use her as an example to others who attempted to resist

23   the mask and vaccination mandates.  *Id.* at 17.  She was also prohibited from interacting with

24   coworkers because management alleged she "posed a threat" to their safety, despite the fact that

25   she was healthy and willing to test regularly.  *Id.*

26        Although COVID-19 testing was required of all unvaccinated employees, the DMV

27   insisted that Plaintiff use third-party contractors like Color Genomics, Inc., with invasive consent

28   requirements regarding the ability to share her DNA data.  *Id.*  From November 2021 onward, the

4

1    DMV began pressuring her daily to sign the consent form, eventually threatening to fire her if she

2    did not so sign. *Id.* at 17-18. Beyond privacy concerns as to how her data could be used by

3    "foreign entities," Plaintiff believed that allowing her genetic information to be harvested and

4    experimented on would violate religious beliefs. *Id.* The DMV rejected her repeat offer to

5    instead have her personal physician test her. *Id.* at 18.

6         Between November 2021 and March 2022, Plaintiff contacted multiple agencies and

7    officials about the purported privacy violations the DMV committed by coercing employees to

8    agree to third-party testing. *Id.* Those so contacted included the CDPH, SEIU 1000, and

9    Defendant Gordon as the DMV director. *Id.* During such efforts, while responding to a Public

10   Records Act request in December 2021, a spokesperson from Governor Newsom's office asserted

11   that he never issued a mandate or executive order requiring vaccination or testing. *Id.* at 19.

12   Later that month, Plaintiff's eighth request for a transfer to a position that would allow her to

13   telework as a reasonable accommodation was denied. *Id.*

14        The DMV terminated Plaintiff on March 17, 2022, purportedly for insubordination via

15   refusal to consent to COVID-19 testing by the state's chosen contractor. *Id.* at 20. The FAC

16   frames this as retaliation for refusal to submit to a policy that was never issued via lawful order,

17   and as discrimination for Plaintiff's lawfully held beliefs, her medical conditions, and

18   whistleblowing activities. *Id.* at 20. Only in January 2023, after Plaintiff's termination, did the

19   DMV concede that Plaintiff had the right to have her doctor test her for COVID-19 like she

20   requested, albeit on her own time and expense. *Id.* at 18.

21        In September 2022, the DMV approached Plaintiff with a settlement agreement that

22   awarded her a sum of money in exchange for waiving her right to sue and resigning. *Id.* at 21.

23   The FAC alleges that Plaintiff signed the settlement agreement while under duress and in a

24   vulnerable state of mind. *Id.* She had been without income for two years at this point, throughout

25   which she was either pregnant or a mother. *Id.* The union lawyer assigned to her case admitted

26   that he represented the union, not her, and dissuaded her from seeking discovery on the issues

27   encompassed in the settlement. *Id.* Plaintiff had compiled 1,000 documents relevant to the

28   matter, which were "lost" or never properly reviewed by the union. *Id.* Plaintiff repudiates the

1  settlement agreement in part by filing this action. *Id.* at 22.

2  　　　　Based on these allegations, the FAC alleges violations of the ADA for failure to provide

3  reasonable accommodations for Plaintiff's inability to wear a mask, including by letting her

4  telework as others did during the pandemic. *Id.* The FAC further alleges religious discrimination

5  under Title VII of the Civil Rights Act, retaliation under Title VII and FEHA, breach of the SLA,

6  and violation of medical privacy. *Id.* at 23-26. Plaintiff also brings a cause of action against

7  Defendant Gordon under 42 U.S.C. § 1983 for violations of her First and Fourteenth Amendment

8  rights. *Id.* at 24-25. Finally, Plaintiff broadly invokes "Natural Law and Fundamental Human

9  Rights." *Id.* at 27-28. Plaintiff seeks reinstatement of her employment with backpay and service

10  credit; declaratory judgment that the mandate was not valid and the settlement agreement void as

11  signed under duress; recission of the settlement agreement; injunctive relief prohibiting further

12  discrimination or retaliation and expunging Plaintiff's termination; $1,250,000 in compensatory

13  and punitive damages; and attorney's fees and costs. *Id.* at 30-32.

14  　　　C.　　Analysis

15  　　　　1.　　The DMV Continues to Enjoy Eleventh Amendment Immunity

16  　　　　The Eleventh Amendment protects states from being sued without their consent, unless

17  Congress has validly abrogated this immunity as to the specific causes of action. *Alaska v.*

18  *EEOC*, 564 F.3d 1062, 1065-66 (9th Cir. 2009). Accordingly, the Court has already dismissed

19  Plaintiff's claims against the DMV with prejudice. ECF No. 6 at 6, 8. Yet the FAC still

20  identifies the DMV as a defendant. ECF No. 10 at 11, 13. When determining whether Plaintiff

21  has pled sufficient facts to state each claim, the Court must also address against whom she may

22  pursue such a claim. This includes whether any of Plaintiff's new claims—i.e., those claim not

23  raised against the DMV in the initial complaint before being dismissed—can be asserted against

24  the DMV in the FAC because Congress has abrogated the DMV's sovereign immunity as to such

25  claims.

26  ////

27  ////

28  ////

6

2.    Federal Causes of Action

a.    Title VII

The FAC alleges two forms of religious discrimination under Title VII of the Civil Rights Act.[1]  First, it alleges that the DMV failed to accommodate Plaintiff's religious objection to the COVID-19 vaccine and genetic testing, instead compelling her to wear a stigmatizing shield on her face and labeling her a threat.  ECF No. 10 at 23.  Second, it alleges that when Plaintiff engaged in protected activities to protest said discrimination, including by reporting it to superiors and other agencies, she was fired in retaliation.  *Id.* at 23-24.

Title VII prohibits the discharge of any employee based on race, color, religion, sex, or national origin.  42 U.S. Code § 2000e-2(a)(1).  Congress validly abrogated state immunity as to discrimination claims under Title VII.  *Nevada Dept. of Human Resources v. Hibbs*, 538 U.S. 721, 729-90 (2003); *see also Alaska*, 564 F.3d at 1068-69 (abrogating state immunity as against discrimination claims under the equivalent Government Employee Rights Act).  The DMV is therefore an appropriate Defendant for this claim if adequately pled.

However, Plaintiff does not explain the religious basis for her objection to the vaccine, beyond saying that "her body is sacred and God-given" and she cannot be compelled to have her DNA "harvested" and "tested on" because it is "the code of life given by God."  *Id.* at 18, 23.  The Ninth Circuit recently held that "[i]nvocations of broad, religious tenets cannot, on their own, convert a secular preference into a religious conviction" for purposes of a discrimination claim.  *Detwiler v. Mid-Columbia Medical Center*, -- F.4th --, Case No. 23-3710, 2025 WL 2700000 at *6 (9th Cir. Sep. 23, 2025).  To allow Plaintiff's claim simply because she invokes the concepts of bodily autonomy and God in the same sentence "would destroy the pleading standard for religious discrimination claims, allowing complainants to invoke magic words and survive a dismissal without stating a prima facie case."  *Id.*

Plaintiff has failed to adequately plead a causal nexus between a sincerely held religious

---

[1]  Analysis of religious discrimination issues under FEHA would be identical to those under Title VII.  *See Allbright v. Southern Calif. Permanent Medical Group Inc.*, --- F.Supp.3d ---, 2025 WL 2205812, at *10-11 (C.D. Cal. July 30, 2025).  The Court thus incorporates Plaintiff's FEHA claims into the Title VII screening in this section.

1  belief and her refusal to vaccinate against COVID-19 or consent to COVID-19 testing. Her claim

2  for religious discrimination and retaliation under the Title VII therefore fails. Plaintiff may,

3  however, amend her claim to articulate more concrete details as to which religious principles the

4  DMV violated. If so, she may also amend her claim to more explicitly direct it against the DMV

5  as a defendant.

6           b.   Americans with Disabilities Act

7       To state a Title I ADA employment discrimination claim, a plaintiff must allege that she is

8  (1) disabled under the ADA, (2) a "qualified individual with a disability," and (3) discriminated

9  against "because of" the disability. *See* 42 U.S.C. § 12112(a) ("No covered entity shall

10 discriminate against a qualified individual on the basis of disability in regard to job application,

11 procedures, the hiring, advancement, or discharge of employees, employee compensation, job

12 training, and other terms, conditions, and privileges of employment."); *Bates v. United Parcel*

13 *Serv., Inc.*, 511 F.3d 974, 988 (9th Cir. 2007). The ADA defines disability with respect to an

14 individual as (1) "a physical or mental impairment that substantially limits one or more major life

15 activities of such individual"; (2) "a record of such an impairment"; or (3) "being regarded as

16 having such an impairment." 42 U.S.C. § 12102(1). Upon establishing a disability, the plaintiff

17 must then "allege that [s]he was subjected to harassment because of [her] disability, and that the

18 harassing 'conduct was sufficiently severe or pervasive to alter the conditions of [her]

19 employment and create an abusive work environment.'" *Mattoida v. Nelson*, 98 F.4th 1164, 1174

20 (9th Cir. 2024) (quoting *Mannatt v. Bank of Am., N.A.*, 339 F.3d 792, 798 (9th Cir. 2003)).

21      Unlike Title VII claims, Title I ADA claims against the DMV are barred by the Eleventh

22 Amendment. *See Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 374 (2001); *Thomas v.*

23 *Nakatani*, 309 F.3d 1203, 1205 (9th Cir. 2002) (Congress did not validly abrogate the state's

24 sovereign immunity under Title I of the ADA). Nor can Plaintiff bring Title I ADA claims

25 against state officials in their official capacities for any remedy other than prospective declaratory

26 or injunctive relief. *Walsh v. Nevada Dep't of Human Resources*, 471 F.3d 1033, 1036 (9th Cir.

27 2006) (emphasis in original) (citing *Garrett*, 531 U.S. at 374 n.9, and *Ex parte Young*, 209 U.S.

28 123 (1908)); *see also Mohsin v. California Dep't of Water Res.*, 52 F. Supp. 3d 1006, 1012 (E.D.

1   Cal. 2014).  Plaintiff does seek such injunctive relief via reinstatement to her former position in

2   the DMV, including seniority rights and backpay, and expungement of her termination from the

3   record.  ECF No. 10 at 30-31.  Whether Defendant Gordon is the appropriate Defendant for such

4   relief, when Plaintiff's direct superiors were responsible for not accommodating any disabilities

5   and eventually terminating her, is unclear.

6          In any case, this Court previously held that Plaintiff did not establish the basis for her

7   disability.  ECF No. 6 at 9.  Aside from a vague and unexplained reference to "respiratory/mental

8   health issues," the FAC cites complications related to her pregnancy as the basis of her disability

9   and the reason she could not wear a mask per COVID-19 mandates.  ECF No. 10 at 14, 22.

10  Courts in the Ninth Circuit have held that pregnancy does not qualify as a disability under the

11  ADA unless circumstances arise that are "not a function of normal pregnancy," like pre-term

12  labor and weeks of bed rest.  *Hogan v. Ogden*, Case No. CV-06-5078-EFS, 2008 WL 2954245, at

13  *4-5 (E.D. Wash. July 30, 2008).  A complaint's pleadings are inadequate if, as here, they fail to

14  articulate how a plaintiff's "pregnancy or related medical condition rendered or currently renders

15  her disabled or how her condition limits one or more of her major life activities."  *Coates v.*

16  *Washoe Cnty. Sch. Dist.*, No. 3:20-cv-00182-LRH-CLB, 2020 WL 7186746, at *5 (E.D. Nev.

17  Dec. 4, 2020).

18         Plaintiff's broad references to respiratory issues and a complication-free pregnancy are

19  inadequate to show that she was disabled under the ADA, that such disability prevented her from

20  wearing a mask, and that the DMV violated the ADA by refusing to let her work from home

21  instead of masking.  Plaintiff has failed to state a claim under the ADA, but may amend her FAC

22  if she can plead additional facts plausibly showing that abnormal complications of her pregnancy

23  constituted a disability.  If Plaintiff so amends her claim, she shall also name as Defendants any

24  DMV employees who participated in the denial of any accommodations for such a disability.

25              c.  Section 1983

26         A plaintiff may bring an action under 42 U.S.C. § 1983 to redress violations of "rights,

27  privileges, or immunities secured by the Constitution and [federal] laws" by a person or entity,

28  including a municipality, acting under the color of state law.  42 U.S.C. § 1983.  To state a claim

9

1    under 42 U.S.C. § 1983, a plaintiff must show that (1) a defendant acting under color of state law

2    (2) deprived plaintiff of rights secured by the Constitution or federal statutes. *Benavidez v.*

3    *County of San Diego*, 993 F.3d 1134, 1144 (9th Cir. 2021). To allege a claim based on an equal

4    protection violation, the plaintiff must allege that while acting under such color of law, the

5    defendant intentionally discriminated against her as a member of an identifiable class. *Flores v.*

6    *Morgan Hill Unified School District*, 324 F.3d 1130, 1134 (9th Cir. 2003).

7         Plaintiff argues that Defendant Gordon violated her First and Fourteenth Amendment

8    rights to free exercise of religion, free speech, and equal protection under the law. ECF No. 10 at

9    24-25. As to freedom of religion, Plaintiff argues that the DMV failed to use the "least restrictive

10   means" possible to address the COVID-19 pandemic, instead requiring her to vaccinate or submit

11   to testing despite her claim to a religious exemption. *Id.* at 24. As to equal protection, she asserts

12   that she was treated differently despite the DMV promising under the SLA to accommodate both

13   her religious and medical exemptions. *Id.* at 25.

14        These arguments lack merit. As discussed above, Plaintiff failed to adequately plead that

15   she has either a medical disability based on her pregnancy or a religious belief exempting her

16   from vaccination, masking, or testing. *See supra* C.2.a-b. Aside from Plaintiff not pleading

17   sufficient facts to demonstrate that her belief in bodily autonomy is a bona fide religious one, the

18   right to refuse vaccination is not a fundamental right. *See Johnson v. Brown*, 567 F.Supp.3d

19   1230, 1251 (D. Or. 2021). Compulsory vaccination is an established police power of a state, and

20   public health laws in general "further the concept of ordered liberty" by balancing individual

21   freedoms against public safety. *Id.* at 1250 (citing *Zucht v. King*, 260 U.S. 174, 176 (1922)).

22   Such policies are therefore subject to only rational basis review instead of strict scrutiny, and

23   upheld if "rationally related to a legitimate state interest." *Johnson,* 567 F.Supp.3d at 1251

24   (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985)). Monitoring and

25   preventing the spread of a disease amidst a pandemic through masking, vaccination, and testing,

26   particularly among public service employees, is a legitimate interest.

27        The FAC provides more support for the allegation that DMV employees retaliated against

28   Plaintiff for exercising her First Amendment right to freedom of speech. Plaintiff argues that the

                                             10

1    DMV penalized her for voicing her objections with its policies to various organizations and

2    officials, including through her termination.  ECF No. 10 at 25.  She asserts that her objections

3    were "protected speech" insofar as they touched on policy matters like public health, data

4    privacy, and government overreach.  *Id.*  She further asserts that trying to force her to sign Color

5    Genomics' consent form was a type of compelled speech.  *Id.*

6        A First Amendment retaliation claim requires that the plaintiff engaged in protected

7    speech, the defendant took adverse action against her employment, and said speech was a

8    "'substantial or motivating' factor for the adverse employment action."  *Dodge v. Evergreen*

9    *School District #114*, 56 F.4th 767, 776 (9th Cir. 2022) (quoting *Howard v. City of Coos Bay*, 871

10   F.3d 1032, 1044 (9th Cir. 2017)).  Whether specific speech is protected under the First

11   Amendment depends on whether it was on a "matter of public concern" and spoken "as a private

12   citizen or public employee."  *Dodge*, 56 F.4th at 777 (quoting *Johnson v. Poway Unified Sch.*

13   *Dist.*, 658 F.3d 954, 961 (9th Cir. 2011)).

14       Speech reflects an issue of public concern if it reflects a "matter of political, social, or

15   other concern to the community" or a "'subject of legitimate news interest.'"  *Dodge*, 56 F.4th at

16   777 (quoting *Lane v. Franks*, 573 U.S. 228, 241 (2014)).  Plaintiff is correct that the measures a

17   public agency implements to protect its employees during a pandemic, including those that could

18   infringe any privacy right she has in her genetic information, are a matter of public concern.  This

19   is particularly true if, as Plaintiff alleges, the DMV implemented these measures without a

20   mandate from the Governor's office and without respecting the exemptions contemplated in the

21   SLA.  ECF No. 10 at 16, 19.

22       The speech at issue must also be spoken as a private citizen rather than a public employee,

23   based on whether a plaintiff has an official duty to make the statements at issue.  *Dodge*, 56 F.4th

24   at 778 (internal quotations omitted).  A plaintiff who reports policies that she objects to, as here,

25   is inherently engaging in speech that exceeds the scope of her employment.

26       Plaintiff has therefore alleged sufficient facts to find that the speech she engaged in was

27   protected under the First Amendment.  She further alleges adverse employment action, including

28   but not limited to her termination, that the DMV may have taken in response to such

11

1  whistleblowing.  ECF No. 10 at 20, 25.  Although the DMV could argue that it terminated her

2  employment because of her refusal to submit to COVID-19 testing, this is a factual dispute not

3  appropriate for screening.

4      These allegations, however, do not sufficiently state a claim as to Defendant Gordon.  His

5  only connection to this cause of action is that Plaintiff contacted him, among others, about her

6  privacy-based objections to Color Genomics' test and her supervisors pressuring her to consent to

7  it.  *Id.* at 18.  Plaintiff pleads no facts to suggest that Gordon was one of the DMV employees who

8  partook in the retaliation that followed, including her termination.  Why Plaintiff does not bring

9  this action against her direct supervisors, those who terminated her for insubordination in March

10  2022, is unclear.  See *id.* at 20.

11     Plaintiff has generally pled sufficient facts to support a claim under 42 U.S.C. § 1983,

12  based solely on alleged retaliation against protected speech under the First Amendment.  She

13  must, however, amend this claim to name as defendants employees within the DMV who partook

14  in such retaliation.  Failure to do so will lead the undersigned to recommend this claim's

15  dismissal.

16         d.  Genetic Privacy

17     The FAC alleges that both federal and state law recognize "a right to keep … personal

18  medical and genetic information private," such that "collection and disclosure of such

19  information" requires consent.  ECF No. 10 at 26.  As to federal authority, Plaintiff alleges that

20  the Genetic Information Nondiscrimination Act ("GINA") categorically prohibits employers from

21  requesting employees to provide genetic information.  *Id.*  The DMV allegedly did this by

22  requiring employees to consent to Color Genomics' COVID-19 tests.  *Id.*

23     GINA prohibits employers from requesting or requiring genetic information from any

24  employees or their family members, with exceptions inapplicable to the current action.  42 U.S.C.

25  § 2000ff-1(b).  The term "genetic information" includes the genetic tests of the individual and

26  members of their family, as well as "the manifestation of a disease or disorder in family members

27  of such individual."  42 U.S.C. § 2000ff(4)(A).  A genetic test, in turn, is a test on "*human* DNA,

28  RNA, chromosomes, proteins, or metabolites," and only to the extent that it "detects *genotypes,*

1    *mutations, or chromosomal changes*."  42 U.S.C. § 2000ff(7)(A)-(B) (emphasis added).  Those

2    who fit under the Civil Rights Act of 1964's definition of "employee" may use the same remedies

3    therein, including litigation, for any unlawful employment practice in violation of GINA.  *See* 42

4    U.S.C. § 2000ff-6(a)(1).

5          The Ninth Circuit has not ruled on whether GINA abrogates a state's sovereign immunity.

6    Although courts in other circuits have ruled that it does not, some acknowledge that Congress

7    may have intended to do so by incorporating Title VII's definition of employees, including

8    government employees.  *See Witherspoon v. New York State Department of Corrections and*

9    *Community Supervision*, Case No. 1:19-CV-01440, 2022 WL 2209565 at *5 (N.D.N.Y. June 21,

10   2022).  At minimum, the applicability of sovereign immunity is sufficiently ambiguous to allow

11   this claim against Defendant DMV for screening purposes.

12         Whether Color Genomics' test results include "genetic information" under GINA is also

13   unclear.  A test that only detects the RNA of a temporary virus, one that does not permanently

14   alter human genes, does not alone qualify as a genetic test.  The FAC alleges, however, that the

15   consent form would give Color Genomics the right to collect, store, or sell "DNA and personal

16   data" for later use.  ECF No. 10 at 17.  This implies that the information may include Plaintiff's

17   DNA, a form of genetic information.  Nor is it clear that an employer may avoid liability under

18   GINA by outsourcing the collection and storage of such information if the employer compels the

19   employee to agree to the underlying test.

20         Plaintiff has pled sufficient facts to state a claim for breach of genetic information privacy

21   against Defendant DMV.  Should Plaintiff choose to amend the FAC as to her other claims, she

22   may also add as defendants to this claim any DMV employees who attempted to coerce Plaintiff

23   into consenting to Color Genomics' test, including any supervisors who retaliated against her for

24   refusing to do so.

25         e.   Medical Privacy (California Constitutional Right to Privacy)

26         The Court construes this claim as falling under California's constitutional right to privacy,

27   which Plaintiff references.  ECF No. 10 at 26.  However, the DMV and its officers acting in their

28   official capacities are immune from prospective injunctive relief and damages for state law claims

13

1    brought in federal court.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106

2    (1984) ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal

3    court instructs state officials on how to conform their conduct to state law."); *see also Spoklie v.*

4    *Montana*, 411 F.3d 1051, 1060 (9th Cir. 2005) (citing *Pennhurst* in dismissing plaintiff's state

5    law claims for damages as barred by the Eleventh Amendment).  Plaintiff has not identified a

6    defendant who can properly be sued based on an alleged violation of the right to privacy, but will

7    be granted leave to amend to attempt to do so.

8               f.   Breach of Contract (Side Letter Agreement)

9         Plaintiff alleges that the SLA required the DMV to accommodate employees "with

10   documented medical or religious exemptions."  ECF No. 10 at 25-26.  The Court therefore

11   understands that a breach of contract claim under the SLA would be require Plaintiff to first show

12   that she warranted such a medical or religious accommodations.  For the reasons provided above

13   as to her Title VII, Free Exercise, and ADA claims, she has not done so, but will be granted leave

14   to amend this claim to attempt to do so as well.

15        Plaintiff also has not identified a proper defendant for this claim.  The DMV would be

16   immune to any state law claim for injunctive relief or damages.  *See supra* C.e.  Plaintiff will be

17   granted leave to amend to attempt to name a proper defendant for this claim.[2]

18          D.  Leave to Amend

19        As discussed above, for screening purposes only, the Court concludes that Plaintiff has

20   stated a claim under GINA against the DMV.  *See supra* C.2.d.  Plaintiff has not, however, stated

21   claims under Title VII or the ADA.  *See supra* C.2.a-b.  Plaintiff's First Amendment retaliation

22   claim is sufficiently cognizable, but only if it identifies individual defendants involved in the

23   alleged retaliation.  *See supra* C.2.c.  Plaintiff has also not stated state law claims.

24        Plaintiff is proceeding pro se, and a pro se litigant should be given leave to amend unless

25   it is absolutely clear that the deficiencies cannot be cured by amendment.  *See Akhtar v. Mesa*,

26

27   [2]  Plaintiff's claims under "Natural Law and Fundamental Human Rights" do not state a claim
     enforceable in federal court.  *See Johnson*, 567 F.Supp.3d at 1247-1248 (holding that requiring
     COVID-19 vaccination for public employees did not violate enforceable principles of
28   international law).

                                                14

1    698 F.3d 1202, 1212 (9th Cir. 2012).  The nature of the failed claims suggest that their

2    deficiencies may be cured.

3        As discussed above, the Title VII and Free Exercise claims fails because Plaintiff relies

4    solely on "broad, religious tenets" to argue that requiring her to mask, vaccinate, or consent to

5    genetic testing discriminates against her faith.  *See supra* C.2.a; *Detwiler*, 2025 WL 2700000 at

6    *6.  In theory, Plaintiff may cure this defect by providing more concrete details as to which

7    religious principles the DMV violated.

8        Similarly, the ADA claim fails in part because the FAC does not suggest that Plaintiff

9    suffered any conditions that were "not a function of normal pregnancy."  *See supra* C.2.b; *Hogan*,

10    2008 WL 2954245, at *4-5.  Plaintiff may have suffered such conditions, particularly as her

11    physician asked to excuse her from masking requirements, and should receive an opportunity to

12    plead them.  ECF No. 10 at 14.  Because the DMV itself is immune from such a claim, however,

13    Plaintiff must also amend her complaint to name as defendants the employees responsible for

14    denying accommodations.

15        Plaintiff will also be granted leave to attempt to assert state law claims against proper

16    defendants.

17        Finally, although Plaintiff has not alleged facts showing that Defendant Gordon retaliated

18    against Plaintiff for engaging in protected speech, the allegations indicate that her supervisors

19    within the DMV did.  *See supra* C.2.c.  Leave to amend this claim to name such supervisors as

20    Defendants is granted.  Similar leave to add Defendants to Plaintiff's claim under GINA is

21    granted, notwithstanding the undersigned's finding that this claim may proceed against Defendant

22    DMV.  *See supra* C.2.d.

23        It is not absolutely clear that the deficiencies in Plaintiff's ADA, Title VII, Free Exercise,

24    First Amendment, and state law claims cannot be cured.  The undersigned will provide Plaintiff

25    an opportunity to amend the FAC to attempt to cure these defects.  Service to Defendant DMV

26    will not be addressed until after the deadline for such amendment has passed.  If Plaintiff chooses

27    to amend the FAC, the Court will then screen that amended complaint.  If Plaintiff chooses not to

28    amend the FAC, the Court will then order service against Defendant DMV as to Plaintiff's GINA

15

1    claim and recommend that the remaining claims be dismissed for failure to state a claim upon

2    which relief can be granted.

3                                    II.  AMENDING THE COMPLAINT

4           If plaintiff chooses to amend the complaint, the amended complaint shall be clearly

5    labeled as the Second Amended Complaint.  In addition, it must contain a short and plain

6    statement of Plaintiff's claims.  The allegations of the complaint must be set forth in sequentially

7    numbered paragraphs, with each paragraph number being one greater than the one before, each

8    paragraph having its own number, and no paragraph number being repeated anywhere in the

9    complaint.  Each paragraph should be limited "to a single set of circumstances" where

10   possible.  Rule 10(b).  As noted above, forms are available to help plaintiffs organize their

11   complaint in the proper way.  They are available at the Clerk's Office, 501 I Street, 4th Floor

12   (Rm. 4-200), Sacramento, CA 95814, or online at www.uscourts.gov/forms/pro-se-forms.

13          The amended complaint must not force the Court or the defendants to guess at what is

14   being alleged against whom.  *See McHenry v. Renne*, 84 F.3d 1172, 1177-80 (9th Cir. 1996)

15   (affirming dismissal of a complaint where the district court was "literally guessing as to what

16   facts support the legal claims being asserted against certain defendants").  The amended

17   complaint should contain specific allegations as to the actions of each named defendant.

18          Also, the amended complaint must not refer to a prior pleading in order to make plaintiff's

19   amended complaint complete.  An amended complaint must be complete in itself without

20   reference to any prior pleading.  Local Rule 220.  This is because, as a general rule, an amended

21   complaint supersedes the original complaint.  *See Pacific Bell Tel. Co. v. Linkline*

22   *Communications, Inc*., 555 U.S. 438, 456 n.4 (2009) ("[n]ormally, an amended complaint

23   supersedes the original complaint") (citing 6 C. Wright & A. Miller, Federal Practice &

24   Procedure § 1476, pp. 556-57 (2d ed. 1990)).  Therefore, in an amended complaint, as in an

25   original complaint, each claim and the involvement of each defendant must be sufficiently

26   alleged.  This includes any claims in the FAC that the undersigned has found sufficiently

27   cognizable.

28   ////

1    Plaintiff's amended complaint must address the issues set forth herein as to inadequately
2    pled claims.

3                              **III.  CONCLUSION**

4    Accordingly, **IT IS HEREBY ORDERED** that:

5    1.   The Court's Findings and Recommendations (ECF No. 9) are WITHDRAWN in light of
6         the filing of the FAC;

7    2.   Plaintiff's motion for leave to amend the complaint (ECF No. 10) is GRANTED, for
8         screening purposes only;

9    3.   Plaintiff may, within **28 days from the date of this order,** file a second amended
10        complaint that addresses the defects in her claims, as set forth above.

11   4.   Plaintiff's failure to comply with this order will result in a recommendation that this
12        action be dismissed except as against Defendant DMV for violations of GINA.

13   SO ORDERED.

14   DATED: October 28, 2025

15

16                                          SEAN C. RIORDAN
                                            UNITED STATES MAGISTRATE JUDGE
17

18

19

20

21

22

23

24

25

26

27

28